IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| ORLANDO C. WOODY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:16-cv-825–HEH |
| ) | |
| NATIONSTAR MORTGAGE LLC, ) | |
| *et al.*, ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
(Denying Plaintiff's Motion to Remand and Granting Defendant's Motion to Compel Arbitration)

THIS MATTER is before the Court on Plaintiff Orlando C. Woody's ("Woody" or "Plaintiff") Motion to Remand (ECF No. 13, corrected in ECF No. 14), Defendant Professional Foreclosure Corporation of Virginia's ("PFC") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 23), and Defendants U.S. Bank, National Association as Indenture Trustee for Springleaf Mortgage Loan Trust 2012-2 ("U.S. Bank") and Nationstar Mortgage LLC's ("Nationstar," and together with U.S. Bank, the "Defendants") Motion to Compel Arbitration and Dismiss or Stay this Action Pending Binding Arbitration. (ECF Nos. 6, 7, 8).

Each side has filed memoranda supporting their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J).

1

For the following reasons, the Court will deny Plaintiff's Motion to Remand and grant Defendants' Motion to Compel Arbitration. The Court will dismiss Count VII against PFC with prejudice and dismiss PFC from this case. Since the Court is Granting Defendants' Motion to Compel Arbitration, Counts I-VI against Defendants will be dismissed without prejudice.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all facts in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). At this stage, the Court's analysis is both informed and constrained by the four corners of Plaintiff's Complaint.[1] Viewed through this lens, the facts are as follows.

On September 25, 2003, Bertha Woody entered into a loan for $30,000 with American General Financial Services Inc. ("American General"), evidenced by a note signed by both parties. (Compl. ECF No. 1-1.) The loan was secured by a deed of trust, encumbering property at 2295 Desha Road in Tappahannock, Virginia. (*Id.* ¶¶ 6–7.) The deed of trust was duly recorded in the Essex County public land records in Deed Book 283, beginning at Page 702. (*Id.* ¶ 7.) American General subsequently assigned the note to U.S. Bank in July 2015, who engaged Nationstar as its servicer. (*Id.* ¶ 14–15.)

---

[1] "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, on a motion to dismiss." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). However, the Court may consider documents "attached or incorporated into the complaint"—as well as those attached to a motion to dismiss—so long as they are "integral to the complaint and authentic." *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

2

The Home Equity Line of Credit Agreement ("HELOC Agreement") accompanying Bertha Woody's deed of trust contained an Arbitration Agreement that encompassed all claims and disputes arising out of, in connection with, or relating to:

> My loan from lender today ... all documents, promotions, advertising, actions or omissions relating to this or any loan or Retail Contract made by or assigned to Lender ... whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement, and the Agreement, my understanding of them, or any defenses as to the validity of the Agreement and this Arbitration Agreement; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based state or federal property laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

(ECF No. 9-1, at 7.) Moreover, the Arbitration Agreement "applies to and runs to the benefit of [both parties'] *assigns, successors, executors, heirs, and/or representatives.*" (*Id.* at 8 (emphasis added).)

Bertha Woody died intestate on November 9, 2014, leaving her only son, Orlando C. Woody, as her sole heir. (Compl. ¶ 10.) On April 24, 2015, Nationstar—acting as servicer of U.S. Bank—executed a document stating that it was appointing PFC as a substitute trustee under the deed of Trust. (*Id.* ¶ 13.) Woody claims that this document "did not, in fact, remove [the original trustee] and did not, in fact, appoint PFC as substitute trustee on the deed of trust because U.S. Bank was not [the] holder of the note on April 24, 2015." (*Id.*) In its capacity as substitute trustee, PFC placed an advertisement in a newspaper with general circulation in Essex County, Virginia, giving

3

notice that it intended to conduct a foreclosure sale on the property encumbered by the deed of trust. (*Id.* ¶ 18.) And on February 16, 2016, PFC conducted the foreclosure sale and sold the property to Herbert Reynolds ("Reynolds"). (*Id.* ¶ 20.)

Woody, who was living in the home on February 16, 2016, avers that he was unaware that the foreclosure sale was taking place and that he was attempting to obtain a loan from his credit union to pay off his mother's debt. (*Id.* ¶ 22.) Reynolds gave Woody a date to move out, and Woody remained in the home beyond that deadline. (*Id.* ¶ 26.) Reynolds evicted Woody from the home and changed the locks but still allowed him to return and pick up some of his personal property. (*Id.* ¶ 28.) Nevertheless, Woody was unable to retrieve all of his personal items, and some of the property that he was able to obtain was damaged in the move. (*See id.*)

As a result, Woody filed a seven-count Complaint against Nationstar, U.S. Bank, and PFC in the Circuit Court of Essex County, Virginia on September 8, 2016, seeking damages from the foreclosure of his mother's home. In Count I, Plaintiff alleges that Nationstar breached the deed of trust by failing to give Plaintiff notice of default prior to foreclosure. (*Id.* ¶¶ 16–31.) Count II asserts that U.S. Bank wrongfully appointed PFC to act as substitute trustee because U.S. Bank was not the holder of the note at the time the substitution took place. (*Id.* ¶¶ 40–42.) In Counts III, IV, and V, Plaintiff alleges that Nationstar committed actual or constructive fraud by misleading Plaintiff to prevent him from pursuing Chapter 13 Bankruptcy and that U.S. Bank is vicariously liable for Nationstar's fraudulent acts. (*Id.* ¶¶ 43–83.) Alternatively, Woody contends in Count VI that the same fraudulent acts previously alleged in Counts III, IV, and V constituted a

4

breach of an implied covenant of good faith. (*Id.* ¶ 84–88.) Finally, in Count VII, Plaintiff alleges "[i]nterference by [PFC] with Contract Rights of [Plaintiff]." (*Id.* ¶¶ 89–96.)

Woody seeks compensatory and punitive damages in the total amount of $1,250,000, as well as attorney's fees as they pertain to Count II. (*Id.* ¶¶ 19–20.)

Nationstar is a limited liability company, and is a citizen of Texas and Delaware. (Notice of Removal ¶ 26, ECF No. 1.) U.S. Bank is a national banking association with its main office in Ohio. (*Id.* ¶ 27.) PFC is a Virginia Corporation with its principal place of business in Virginia. (*Id.* ¶ 29.) And Plaintiff is a citizen of the Commonwealth of Virginia. (Compl. ¶ 1.)

Defendants, without PFC, removed the action to this Court pursuant to 28 U.S.C. § 1332(a) on October 7, 2016, well within the thirty-day timeline required by 28 U.S.C. § 1446. (*See* Notice of Removal.) They argue that, although Plaintiff and PFC are both citizens of Virginia, PFC was fraudulently joined in this action to prevent complete diversity. (*Id.*) Woody filed a Motion to Remand (ECF No. 13, corrected in ECF No. 14), opposing removal. Defendants filed a Motion to Compel Arbitration pursuant to the provisions in the HELOC Agreement. (ECF No. 6, 7, 8.) And PFC filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 1, 2016. (ECF No. 23.)

## II. STANDARD OF REVIEW

### a. Motion to Remand

As the removing parties, Defendants bear the burden of demonstrating that this

Court has subject-matter jurisdiction. *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 302 (4th Cir. 2016). Additionally, Defendants must satisfy the requirements of 28 U.S.C. § 1446, which outlines the procedure for removal. *See Marler v. Amoco Oil Co.*, 793 F. Supp. 656, 658–59 (E.D. N.C. 1992) ("Defendant bears the burden of establishing the right to removal, including compliance with the requirements of [28 U.S.C.] § 1446(b)."). Removing proceedings from state court raises significant federalism concerns; accordingly, "[i]f federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994).

This Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). Diversity must be complete "such that the state of citizenship of each plaintiff must be different from that of each defendant" at the time an action commences. *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999).

However, "[t]he fraudulent joinder doctrine provides an exception to the complete diversity requirement." *E.D. ex rel. Darcy v. Pfizer, Inc.*, 722 F.3d 574, 578 (4th Cir. 2013). The doctrine "permits a federal court to disregard, for jurisdictional purposes, the citizenship of non-diverse defendants." *McFadden v. Fannie Mae*, 525 Fed. App'x 223, 227 (4th Cir. 2013) (citations and quotation marks omitted).

The term "fraudulent joinder" is, in many ways, a misnomer. *See id.* More accurately characterized, it is "a term of art, [which] does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no

6

cause of action is stated against the non-diverse defendant, or *in fact* no cause of action exists." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (citations and quotation marks omitted). "The removing party must establish that there is no possibility the plaintiff could establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts. A claim need not succeed to defeat removal; only a *possibility* of a right need be asserted." *Sherman v. Litton Loan Servicing, L.P.*, 796 F. Supp. 2d 753, 759 (E.D. Va. 2011) (citations omitted).

The burden is on the party claiming fraudulent or improper joinder to show that a claim could not be established against the non-diverse defendant, even after resolving all issues of law and fact in the plaintiff's favor. *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999) (citing *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232–33 (4th Cir. 1993)). The Fourth Circuit counsels that the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley v. CSX Trans., Inc.*, 187 F.3d 422, 424 (4th Cir.1999) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992)). Consequently, the defendant must shoulder a significant burden to establish fraudulent joinder. *Marshall*, 6 F.3d at 232–33.

### b. Motion to Dismiss under Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952

7

(4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570.

In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the Complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### c. Motion to Compel Arbitration

The Supreme Court has stated that there is "a liberal federal policy favoring arbitration" and that "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Nevertheless, whether a party has agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986); *see also Arrants v.*

*Buck*, 130 F.3d 636, 640 (4th Cir. 1997) ("Courts decide whether there is an agreement to arbitrate according to common law principles of contract law."). "In so deciding, the court should apply 'ordinary state-law principles that govern the formation of contracts.'" *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir. 1998) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

### III. ANALYSIS

To begin, the Court will address the merits of Woody's Motion to Remand because it calls into question whether this Court has jurisdiction in this matter. The Court will subsequently analyze Defendants' Motion to Compel Arbitration.

#### a. Motion to Remand & Motion to Dismiss

The doctrine of fraudulent joinder allows the Court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). The Court can find that fraudulent joinder applies either when "there has been outright fraud in the plaintiff's pleading of jurisdictional facts" or when "there is *no possibility* that plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (citations omitted). Because the Defendants in this case do not suggest outright fraud, the Court will limit its inquiry to whether there is a possibility that Plaintiff can recover against PFC.

In a fraudulent joinder analysis, the defendant bears the burden of demonstrating that there is "no reasonable basis" to predict that a plaintiff could recover against the in-

state defendant. *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 918 (E.D. Va. 2005) (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)); *see also Boss v. Nissan N. Am. Inc.*, 228 Fed. App'x 331, 335 (4th Cir. 2007) ("[A] defendant is fraudulently joined if there is 'no reasonable basis for predicting that state law might impose liability on the facts involved.'") (unpublished per curiam opinion) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). In determining whether a purported joinder is fraudulent, "the court is not bound by the allegations of the pleadings but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" *AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).

In Count VII, the only count where Plaintiff alleges any wrongdoing against PFC, Woody alleges "Interference by [PFC] With Contract Rights of Woody." (Compl. 17.) Specifically, Plaintiff alleges that PFC conducted an unlawful, non-judicial foreclosure because the instrument purportedly appointing PFC as substitute trustee was invalid. (*Id.* ¶ 94.) Consequently, Woody argues that PFC's actions pursuant to the allegedly invalid appointment instrument interfered with Plaintiff's rights under the deed of trust. (*Id.* ¶ 95.)

In response, Defendants contend that a substitute trustee does not have an obligation to prove the validity of an appointment document prior to foreclosure. (Notice of Removal 9 (citing *Pham v. Bank of N.Y.*, 856 F. Supp. 2d 804, 810 (E.D. Va. 2012) ("But just as a noteholder is not 'required to come to a court of law and prove its

10

authority or standing to foreclose on a secured property,' so too a nominal beneficiary or a substitute trustee, for the same reason, should not be required to prove in court that it has the noteholder's authority.") (quoting *Gallant v. Deutsche Bank Nat'l Trust Co.*, 766 F. Supp. 2d 714, 721 (W.D. Va. 2011))).)

Moreover, Defendants assert that Plaintiff lacks standing to challenge the foreclosure because he was not a party to the instrument appointing PFC as substitute trustee. (*See id.* at 7–9; *see also Morrison v. Wells Fargo Bank, N.A.*, 30 F. Supp. 3d 449, 453–54 (E.D. Va. 2014) (holding that a plaintiff must be a party to or an intended beneficiary of the instrument in order to challenge the appointment of a substitute trustee).)

Plaintiff counters that some Virginia Circuit Courts have found that a borrower may have standing as a third-party beneficiary to challenge the appointment of a substitute trustee. *See, e.g., Burgest v. Commonwealth Trustees*, CL 14008747-00, at *4–7 (Va. Cir. Ct. Feb. 26, 2016). Therefore, Plaintiff asserts that there is a possibility that he would be able to establish a cause of action against PFC in state court. (*See generally* Mem. in Supp. of Mot. to Remand, ECF No. 15.)

Despite being framed as a tort action, Plaintiff's argument against PFC essentially hinges on a finding that PFC lacked authority to conduct a non-judicial foreclosure— otherwise known as a "show-me-the note" theory of liability. *See Gallant*, 766 F. Supp. 2d at 720–21 (characterizing a plaintiff's allegations that the defendant failed to provide proof of the original note as a "show me the note" claim and dismissing the case). However, Virginia's non-judicial foreclosure laws do not require a substitute trustee to

11

prove the validity of the appointment instrument. *Cf.* Va. Code § 55-59.1(B) ("If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced . . . the trustee may nonetheless proceed to sale . . . ."); *Pham*, 856 F. Supp. 2d at 810–11 (finding that a "show me the note" theory has been widely rejected as "contrary to Virginia's non-judicial foreclosure laws") (quoting *Gallant*, 766 F. Supp. 2d at 720–21); *Jesse v. Wells Fargo Home Mortg.*, 882 F. Supp. 2d 877, 880 (E.D. Va. 2012) (holding that a "show me the note" claim was contrary to Virginia state law); *Davis v. Samuel I. White, P.C.*, No. 3:13cv780, 2014 WL 1604270, at *21–23 (E.D. Va. Apr. 21, 2014) (rejecting plaintiff's arguments that a defendant must prove in court that it had the noteholder's authority to foreclose); *Burgest v. HSBC Bank, USA*, Case No. CL14007847-00, at *7 (Va. Cir. Ct. Norfolk, Feb 26, 2016) (holding that "the nonexistence of a recorded instrument has no bearing on whether an assignment occurred").

Accordingly, even assuming that Plaintiff has standing under Virginia law to challenge the contract, there is "no possibility" that he could succeed on the merits by basing his interference arguments against PFC on a "show me the note" theory. *See Pham*, 856 F. Supp. 2d at 809.

Therefore, the Court finds that Woody would not have "a glimmer of hope" to recover against PFC in state court. *Id.* at 809–10. Thus, the Court holds that it has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because Plaintiff's claims exceed $75,000 and because Woody is a resident of Virginia, while Nationstar is incorporated in Delaware with a principal place of business in Texas, and

U.S. Bank has its principal place on business in Ohio. (ECF. No. 1 at 5.) Though PFC is a Virginia resident, the doctrine of fraudulent joinder allows the Court to "disregard, for jurisdictional purposes," the citizenship of improperly joined parties. *See Mayes*, 198 F.3d at 461. Consequently, the Court will deny Plaintiff's Motion to Remand. Further, the Court will dismiss Count VII against PFC with prejudice and will dismiss PFC from this case.

### b. Motion to Compel Arbitration

In order to succeed on a motion to compel arbitration, the moving party must prove "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

It is well settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citation and quotation marks omitted). Therefore, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). And "[a]n order to arbitrate the particular grievance should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Peoples Sec. Life Ins. Co. v. Monumental*

*Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

In their Motion, Defendants argue that all four *Whiteside* factors are satisfied in this case. First, Defendants contend that the current litigation over the terms of Bertha Woody's loan is sufficient to prove the existence of a dispute between the parties. (Mem. in Support of Mot. to Compel Arbitration 3–4, ECF No. 9.) Second, Defendants allege that the claims in Woody's Complaint are subject to the Arbitration clause in the HELOC Agreement accompanying his mother's loan. (*Id.* at 4–5.) Third, U.S. Bank and Nationstar assert that mortgage loans are regulated by federal law and thus affect interstate commerce, which is consistent with prior rulings of this Court. (*Id.* at 5. (citing *Nat'l Home Equity Mortg. Ass'n v. Face*, 64 F. Supp. 2d 584, 592 (E.D. Va. 1999)). And fourth, Defendants urge the Court to compel arbitration because Plaintiff's counsel has repeatedly refused to consent to it. (*Id.*)

In response, Plaintiff argues that Defendants did not comply with the Arbitration Agreement's requirement that Defendants provide him notice prior to filing a claim for arbitration. (Mem. in Opp. to Mot. to Compel 1-2, ECF No. 25.) Further, he alleges that this Court lacks subject matter jurisdiction to rule on this Motion because Defendants improperly removed this case on the basis of diversity jurisdiction. (*Id.* at 4.)

Defendants' arguments persuade the Court to grant the Motion to Compel Arbitration. To begin, the Court determines that the first element under *Whiteside* is met because the parties are currently engaged in litigation over the legitimacy of the Defendants' decision to foreclose on Woody's inherited home. (*See generally* Compl.)

Woody alleges, yet Defendants deny, that Defendants failed to give notice as required by the deed of trust and committed fraud during the foreclosure proceedings. (*See generally id.*; Notice of Removal ¶¶ 8–20.) Due to the divergent views over the foreclosure, the Court finds that a dispute clearly exists between the parties. *See Whiteside*, 940 F.2d at 102.

As to the second element, the Court finds that the Arbitration Agreement covers this dispute and that Defendants complied with its conditions. Although neither Plaintiff nor Defendants signed the original note and HELOC Agreement, the Arbitration Agreement "applies to and runs to the benefit of [both parties'] *assigns, successors, executors, heirs, and/or representatives*." (ECF No. 9-1, at 8 (emphasis added).) As previously stated, American General—the original noteholder—assigned its rights to Defendants, and Plaintiff is the son—and sole heir—of Bertha Woody. Additionally, and perhaps more importantly, this dispute hinges on whether Plaintiff acquired his mother's contractual rights and if Defendants complied with the terms of the deed of trust. (*See* Compl. ¶¶ 9–96.) As a result, the dispute directly concerns the "closing, servicing, collecting, or enforcement of any transaction covered by this Agreement." (ECF No. 9-1 at 7.)

Regarding the "conditions" that Plaintiff alleges Defendants violated, the Court finds that Defendants did not owe a duty to notify Plaintiff prior to filing the present Motion. The Arbitration Agreement states that Defendants "must write to [Bertha Woody] at [her] billing address; describe its claim or dispute; state the dollar amount of its claim or dispute; and give [her] a reasonable opportunity to resolve the claim or

15

dispute." (ECF No. 9-1, at 7.) However, it was Plaintiffs, not Defendants, who first filed a Complaint. Moreover, a clear distinction exists between initiating arbitration and simply filing a motion to compel it. Consequently, the Court concludes that Defendants have taken no action that would trigger this condition precedent. As such, the Court finds that the Arbitration Agreement is both enforceable and covers the dispute in question.

As for the third *Whiteside* element, the Court finds that Bertha Woody's loan—subject to the Arbitration Agreement—relates to interstate commerce. This Court has previously held that "the borrowing and lending of money is commerce that falls within Congress' broad commerce power." *National Home Equity Mortg. Ass'n v. Face*, 64 F. Supp. 2d 584, 592 (E.D. Va. 1999). Therefore, the Court holds disputes arising from the loan clearly implicate interstate commerce.

Finally, the fourth element is satisfied because Plaintiff has refused to engage in arbitration. Plaintiff has declined Defendants' offers to arbitrate his claims and thus has neglected or refused to arbitrate the dispute. (*See* Mot. to Compel Arbitration 5; *see generally* Resp. in Opp. to Mot. to Compel Arbitration.)

As to Plaintiff's arguments that this Court lacks subject-matter jurisdiction to rule on the present Motion, the Court finds that they are unavailing for the reasons stated above. *See supra* Part III.a.

Therefore, the Court finds that the four factors under *Whiteside* have been met, and will compel arbitration in this matter.

IV. **CONCLUSION**

Based on the foregoing, Plaintiff's Motion to Remand will be denied. The Court

16

will dismiss Count VII against PFC with prejudice and dismiss PFC from this case.

Additionally, the Court will grant Defendants' Motion to Compel Arbitration and will dismiss this case without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

The clerk is directed to send a copy of this Opinion and the accompanying Order to all counsel of record.

                                        /s/
                                  Henry E. Hudson
                                  United States District Judge

Date: Jan. 30, 2017
Richmond, Virginia